**Lieutenant Colonel G. Allan SIRMANS, USA Plaintiff,**

v.

**Louis CALDERA, Secretary of the Army, Defendant.**

No. CIV.A. 00–1135 (RCL).

United States District Court, District of Columbia.

March 19, 2001.

Christopher Alexander Sterbenz, Vienna, VA, for Plaintiff or Petitioner.

Herbert Forrest, U.S. Department of Justice, Civil Division, Washington, DC, for Defendant or Respondent.

### *MEMORANDUM OPINION*

LAMBERTH, District Judge.

Now before the Court is the defendant's motion to dismiss the plaintiff's complaint. The plaintiff, an American Indian male, alleges that he was several times denied a promotion by the defendant's equal opportunities policies. These policies, he alleges, violate the Fifth Amendment. After a full consideration of the parties' memoranda and the applicable law, the Court GRANTS in part and DENIES in part the defendant's motion.

### *BACKGROUND*

Allan Sirmans is a lieutenant colonel serving on active duty in the United State Army. For five consecutive years, he sought a promotion to the rank of colonel.

In each case, the promotion selection board denied him a promotion.

In 1998, LTC Sirmans came before this Court challenging two instances of his non-promotion. He alleged that the Army's policy and practice of giving preference to minorities and women in promotion decisions caused him not to be promoted in 1997 and 1997 (August). That claim was settled out of Court. The plaintiff now comes before this Court alleging that he was denied a promotion in various years due to (1) the Army's policies and practices with respect to selection board membership, and (2) the Army's equal opportunity policy with respect to promotion. He also alleges that he was denied a promotion in 1996, 1999, and 2000 as a result of the Army's policy and practice of giving preferences to minorities and women in promotion. See Complaint for Sirmans, July 21, 2000, at ¶ 29.

#### A. The Army's Selection Board Membership Policies

The Army has an official policy of composing its promotion selection boards with "at least one minority and one female." See Brief for Defendant, Nov. 15, 2000, at 5 (citing to Defendant's Exhibit A–3). LTC Sirmans alleges in his complaint that the policy and practice of requiring "one or more females and one or more members of racial groups other than Caucasian [to be on the selection board]", and the *lack* of a policy requiring "one or more males and one or more members of the Caucasian racial group [to be on the selection board]" caused him to be repeatedly passed over for promotions. Complaint for Sirmans, July 21, 2000, at ¶ 29.

#### B. The Army's Equal Opportunity Policies with Respect to Promotion

In addition to his board membership claim, LTC Sirmans also alleges that he

was denied a promotion in 1996, 1999, and 2000 as a result of the Army's policy and practice of giving preferences to minorities and women in promotion. *See* Complaint for Sirmans, July 21, 2000, at ¶ 29. Although the policy has changed several times during the years in question, its consistent use of a "revote" policy is a core dispute in this case.[1]

As its name suggests, the revote procedure occurs after the selection board has "completed a review of [the officers'] personnel files and initially ranked [them] in order of qualification for promotion." Brief for Defendant, Nov 15, 2000, at 4 (quoting *Sirmans v. Caldera*, 27 F.Supp.2d 248, 249 (D.D.C.1998) (Lamberth, J.)). After this ranking, and in accordance with official instructions, the selection board reviews the results to determine whether promoting the leading candidates from the first ranking would "produce a selection rate for minorities and women that was comparable to the selection rate for all officers considered for promotion." Brief for Defendant, Nov. 15, 2000 at 4. If promotions made in accordance with the initial ranking would *not* produce comparable promotion rates, the board was then obliged to reexamine the records of all female and minority candidates who were qualified for promotion yet unable to receive one on account of their ranking. The reexamination was "to determine if any of the personnel files show[ed] evidence of discrimination against the individual officer." *Id.* If a majority of the selection board found "evidence of past discrimination, that officer was 'revoted' and assigned a new qualification ranking." *Id.* This new ranking might be higher or lower than the candidate's first ranking and might not result in the candidate being ranked high enough for a promotion. In any event, the ranking ascribed to the female or minority applicant was final after the revote took place.

\* \* \* \* \* \*

In sum, LTC Sirmans claims that his promotion was repeatedly thwarted by the Army's selection board membership policy and its equal opportunity policy with respect to promotion. The Court now considers these and other pertinent issues.

## ANALYSIS

### I. Jurisdiction

Because the plaintiff's well-pleaded complaint presents a federal question, this Court properly has jurisdiction under 28 U.S.C. § 1331.

### II. Standard of Review

If a plaintiff has failed "to state a claim upon which relief can be granted," a court may grant a defendant's motion to dismiss. Fed.R.Civ.P. 12(b)(6); *see also Hishon v. King Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir.2000). In evaluating a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and give the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Wiggins v. Hitchens*, 853 F.Supp. 505, 508 n. 1 (D.D.C.1994) (citing 2A Moore's Federal Practice, § 12.07, at 63 (2d ed.1986)

---

1. Although the "revote" policy was formally rescinded in September 1999, the defendant claims that the FY 2000 policy still contained unlawful preferences for woman and minorities. *See* Complaint for Sirmans, July 21, 2000, at 8.

(footnote omitted); *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987)).

### III. The Plaintiff's Claim Based on Selection Board Membership

The plaintiff alleges that he was denied a promotion five consecutive times because the Army has a policy of requiring that women and minorities sit on selection boards. This policy, he alleges, violates the Constitution. The defendant argues that the plaintiff is either without standing to pursue this claim, or is without a constitutional right in the first place. The Court finds that he is without standing to facially challenge the composition of the selection board.

▮ Article III standing rules ensure that parties will not "convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (quoting *United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)). To this end, one of the requirements for standing is that there be "a causal relationship between the [plaintiff's] injury and the challenged conduct." *Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (citations and internal quotation marks omitted) (analyzing a plaintiff's standing in an equal protection challenge to an affirmative action program); *see also Simon v. Eastern Kent. Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). This should not sug-

gest, however, that one need show that the defendant's conduct was the *proximate* cause of the alleged injury. *See Public Interest Research Group of N.J. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3d Cir.1990) ("The 'fairly traceable' requirement of the Valley Forge test is not equivalent to a requirement of tort causation."); *Loggerhead Turtle v. County Council of Volusia County, Fla.*, 148 F.3d 1231, 1251 n. 23 (11th Cir.1998). Rather, a plaintiff need only show that there is a "substantial likelihood" that the defendant's conduct caused the plaintiff's injury. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 75 n. 20, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

▮ Thus, the Court is posed with the question of whether there is a substantial likelihood that the Army's selection board membership policy caused the plaintiff's non-promotion. The Court finds that there is not such a likelihood. To hold otherwise would be to hold that every time "one or more females and one or more members of racial groups other than Caucasian" are placed on a selection board, the collective promotion decisions of the selection board are unavoidably altered. Such a conclusion would necessarily include two presumptions. First, that *all* women and non-whites have an inherent and unavoidable disposition to favor their own race and gender. And second, that all promotion decisions by selection boards are controlled by the voting habits of a few women and non-whites.

The first presumption is not just patently false, it is diametrically opposed to Supreme Court jurisprudence which this Court is bound to follow.[2] The Supreme

---

2. Aside from Supreme Court jurisprudence, at least one court has considered the composition of a military selection board in an Equal Protection action. In evaluating whether the racial make-up of a particular selection board gave rise to an inference of discrimination, Judge Green recognized that "[t]here is a strong presumption that ... selection board members faithfully discharge[] their duties." *Emory v. Secretary of the Navy*, 708 F.Supp.

Court has consistently shunned such racial and gender stereotypes, and, in any event, has never held that a decisionmaker's race or sex, by itself, prevents her from making an objective decision. *See, e.g., Bush v. Vera,* 517 U.S. 952, 986, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996) ("Our Fourteenth Amendment jurisprudence evinces a commitment to eliminate unnecessary and excessive governmental use and reinforcement of racial stereotypes."); *Georgia v. McCollum,* 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) ("[T]he exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party"); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) ("If our society is to continue to progress as a multiracial democracy, it must recognize that the automatic invocation of race stereotypes retards that progress and causes continued hurt and injury"); *Powers v. Ohio* 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) ("We may not accept as a defense to racial discrimination the very stereotype the law condemns"); *Holland v. Illinois,* 493 U.S. 474, 484, n. 2, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990) ("[A] prosecutor's 'assumption that a black juror may be presumed to be partial simply because he is black' ... violates the Equal Protection Clause"); *Batson v. Kentucky,* 476 U.S. 79, 85, 104, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ("[T]he Equal Protection clause forbids ... the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.", "[T]he Equal Protection Clause prohibits a State from taking any action based on crude, inaccurate racial stereotypes.").

The second presumption behind the plaintiff's claim is completely devoid of logic. While it is reasonable to assume that women and non-whites, together with the other members of selection boards, inform the decisions of the board, it is patently unreasonable to assume that a few members, constituting a numerical minority of the board, can control the outcome of the board's decisions. Thus, even if women and non-whites were possessed of the class narcissism which the plaintiff implies, there is no reason to think they would be successful in converting the rest of the board to their views.

Of course, there exists the *possibility* (though it is a slight one for sure) that a particular woman or minority, possessed of both class narcissism and Machiavellian powers of persuasion, could pull off a coup of racial or gender discrimination against a particular applicant. But the mere possibility of this is a far cry from the necessity that, in a facial challenge, the plaintiff "establish that no set of circumstances exists under which the [policy] would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *see also Ohio v. Akron Center for Reproductive Health,* 497 U.S. 502, 514, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990).

Nonetheless, as the preceding paragraph recognizes, just because the Court rejects the plaintiff's facial challenge does not mean that the selection board composition is irrelevant to the plaintiff's discrimination claim. Indeed, the plaintiff in this case might, in accordance with his duty to demonstrate a discriminatory purpose under *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), utilize the selection board membership, together with other evidence such as the

1335, 1343 (D.D.C.1989) (citing *Neal v. Secretary of the Navy,* 639 F.2d 1029, 1037 (3d Cir.1981) (relying on a strong presumption of

good faith in the conduct of Navy promotion selection boards)).

promotion rate for certain races and genders, to persuade the Court that he has been discriminated against. In short, if the plaintiff was victimized by the Machiavellian narcissist, he can still pursue that claim.

## IV. The Plaintiff's 1996, 1997, and 1997 (August) As–Applied Claims

The defendant argues that, because the plaintiff settled his prior suit, the doctrine of res judicata necessarily merits the dismissal of the plaintiff's 1996, 1997, and 1997 (August) claims regarding selection board membership. The Court disagrees, and finds that the plaintiff may proceed with his as-applied claims based on the conduct of these selection boards.

### A. Collateral Estoppel through Judicial and Extra–Judicial Disposition

When a party returns to court to press a grievance that was already once resolved, courts necessarily look to estoppel doctrines to determine if the claimant may proceed. A court's analysis, however, depends on whether the first suit was resolved by the court or by the parties.

When a judicial disposition occurs, and the claimant returns to court seeking further relief, the claimant is often barred by the doctrine of collateral estoppel, which prevents parties from bringing "subsequent suits based on the same cause of action." *Nixon v. U.S.*, 978 F.2d 1269, 1298 (D.C.Cir.1992); *see also Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (recognizing that parties should be precluded from "contesting matters that they have had a full and fair opportunity to litigate"). As might be expected, the preclusive effect of collateral estoppel begs the question of what constitutes a cause of action. In answering this question, the D.C. Circuit has "adopted a transactional approach to

the issue." *Nixon v. U.S.*, 978 F.2d at 1298 (citing *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Industrial Gear Mfg. Co.*, 723 F.2d 944, 947 (D.C.Cir.1983) and *U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 (D.C.Cir.1985)). Under a transactional approach, "considerations such as whether the facts giving rise to the former proceeding and the current claim are related in time, space, origin or motivation, whether the claims form a convenient trial unit and whether the parties expected the claims to be treated as a unit are all relevant to the determination whether the claims arise out of the same general cause of action." *Nixon*, 978 F.2d at 1298; *U.S. Indus.*, 765 F.2d at 205.

When a case is settled extra-judicially, however, courts take a different tack in determining the claim that has been precluded. Instead of applying the transactional approach to the plaintiff's first complaint, a court merely applies "familiar principles of contract law" to the settlement agreement. *Village of Kaktovik v. Watt*, 689 F.2d 222, 230 (D.C.Cir.1982) (collecting cases supporting this principle); *see also United States v. ITT Continental Baking, Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975). This is because "[a]n agreement to settle a legal dispute is a contract." *Village of Kaktovik*, 689 F.2d at 230. Such contracts, to be useful to the defendant, usually contain a clause requiring plaintiffs to waive their right to bring future suits on the issue being settled. In such cases, the court uses traditional principles of contract interpretation to determine what claims the parties intended to "foreclose ... from future litigation." *See, e.g., Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992); *see also Gall v. South Branch Nat'l Bank of South Dakota*, 783 F.2d 125, 127 (8th Cir.1986); *Kaspar Wire Works, Inc. v. Leco Engineering and Machine, Inc.*, 575

F.2d 530, 535 (5th Cir.1978); *Carter v. Rubin,* 14 F.Supp.2d 22, 34 (D.D.C.1998) (Lamberth, J.).

Finally, even when a case is resolved by an agreement of the parties, it is important to distinguish whether the resolution was wholly extra-judicial or only partially so. When a case is settled by the parties, and the court is not asked to approve the settlement in any way, courts interpret the agreement using, as explained above, traditional principles of contract interpretation. However, in cases where the court is asked approve the settlement agreement, some courts have interpreted the agreement using somewhat more of transactional approach. *See Bailey v. DiMario,* 925 F.Supp. 801, 810–11 (D.D.C.1995) (precluding claims that had also been the subject of a court approved class action settlement agreement because of res judicata); *but see EEOC v. Peterson, Howell & Heather, Inc.,* 702 F.Supp. 1213, 1218 (D.Md.1989) (rejecting arguments of preclusion based on res judicata and collateral estoppel and stating "[d]efendants liken the settlement agreement to a consent decree, but the settlement agreement was not passed upon by any court. The settlement agreement was merely an extrajudicial agreement between a state agency and a private party.").

## B. The Settlement Agreement

With these legal precedents in mind, the Court now turns to the estoppel issue in the instant case. The Court first notes that the settlement agreement in this instant case was not approved by the Court in any way. Thus, the proper interpretation of the agreement is along strict contractual lines. The pertinent portion of the settlement agreement reads:

Lieutenant Colonels Sirmans and Buchholz warrant and represent that no other action or suit with respect to the *claims alleged in his complaint* in this case are pending or will be filed in, or submitted to, any court, administrative body, or legislative body by Lieutenant Colonels Sirmans and Buchholz, at their direction, or for their benefit.

*Sirmans v. Caldera,* Civ. A. No. 98–278(RCL), Settlement Agreement, April 9, 1999, at ¶ 10 (emphasis added). Following the edict of the provision, the Court refers to the plaintiff's 1998 complaint to determine what claims were alleged. In a section titled "Count one",[3] the complaint reads

The Department of the Army denied the plaintiffs their constitutional right to equal opportunity for promotion through an equal opportunity instruction requiring the … Promotion Selection Board to give special promotion consideration to minorities and women … .

*Id.,* Complaint, Feb 4, 1998, at ¶ 17.

■ Looking at the terms of these legal documents, the Court finds that the settlement agreement does not have preclusive effect on the plaintiff's current suit. The settlement agreement explicitly refers to "claims alleged in [the] complaint" and the first complaint did not allege, much less mention, anything regarding the composition of the selection board. The Court therefore finds that the plaintiff's present claim is not precluded by the settling of his previous claim.

In arguing to the contrary, the defendant confuses the different strains of estoppel analysis. The defendant cites caselaw supporting the proposition that the claims in the plaintiff's first complaint should be interpreted broadly. If the

---

**3.** The complaint contained a second count that was identical to this count in all ways

except that it alleged a due process violation, not an equal protection violation.

plaintiff's first case had been disposed of by the Court, the defendant's argument might be persuasive, as the plaintiff's current suit presents claims which likely are related in "time, space, origin [and] motivation" to his first suit. *Nixon*, 978 F.2d at 1298. But the plaintiff's first suit was not disposed of judicially; rather, it was settled solely by the parties with an agreement that explicitly identified which claims would be precluded from future suits, namely "suit[s] with respect to the claims alleged in his complaint." The settlement agreement could easily have been written to foreclose the current suit; it could have been written so as to preclude a suit involving "issues raised in his complaint", or "claims arising from his non-promotion", or even "claims of discrimination by selection boards." But the agreement did not do this. And to interpret it so that it did would only be to deprive the plaintiff of the bargain which, the Court can only assume, he struck intentionally. *See, e.g.,* *United States v. Peglera*, 33 F.3d 412, 413 (4th Cir.1994) (citing *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir.1993)) (noting that a "central tenet of contract law is that no party is obligated to provide more than is specified in the agreement itself" and that "each party should receive the benefit of its bargain").

In conclusion, the Court notes that the plaintiff's case against the 1997 and 1997 (August) selection boards will necessarily differ from his other claims. Unlike his claims against the 1996, 1999, and 2000 boards, the plaintiff does not allege that the 1997 and 1997 (August) boards utilized the contested revote policy. Thus, with respect to the 1997 and 1997 (August) boards, the plaintiff's case of discrimination will only consist of evidence, if any, that the particular board members intended to deprive him of a promotion on account of his race or sex.

## IV. The Plaintiff's Claim Based on the Army's 1996, 1999, and 2000 Equal Opportunity Policies

█ The plaintiff alleges that he was denied a promotion in 1996, 1999, and 2000 as a result of the Army's equal opportunity policy, otherwise known as the "review and revote" policy. This policy, he alleges, is unconstitutional. The Court finds that his complaint states a claim for which relief can be granted and therefore denies the defendant's motion to dismiss.

█ It is axiomatic in the era of notice pleading that a plaintiff need only provide "a short, plain statement of the claim" such that "the defendant [will have] fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, (D.C.Cir.2000) (quoting Fed.R.Civ.P. 8(a)); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, a complaint "need not plead law or match facts to every element of a legal theory." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.Cir.2000) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998)); *see also Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1086 (D.C.Cir.1998) ("[A] plaintiff need not allege all the facts necessary to prove its claim."); *Atchinson v. District of Columbia*, 73 F.3d 418, 421–22 (D.C.Cir.1996) ("A complaint ... need not allege all that a plaintiff must eventually prove."). As Judge Easterbrook put it in the employment discrimination context:

> Because racial discrimination in employment is 'a claim upon which relief can be granted,' .... 'I was turned down for a job because of my race' is all a complaint has to say to survive a motion to dismiss under Rule 12(b)(6).'

*Sparrow*, 216 F.3d at 1114 (quoting *Bennett*, 153 F.3d at 518).

The Court finds that the plaintiff has met this minimal threshold. Racial and gender discrimination in promotion are, of course, claims "upon which relief can be granted," and the plaintiff's statement that the defendant's racial and gender preferences denied him a promotion thus squarely states a claim.

### CONCLUSION

In summary, the Court finds that the plaintiff's as-applied claim of discrimination by the 1996, 1997, 1997 (August), 1999, and 2000 selection boards may proceed. The plaintiff's facial challenge to the defendant's selection board membership policy, however, is dismissed. An order consistent with this Memorandum Opinion shall issue this date.

### ORDER

Consistent with the Memorandum Opinion issued this date, it is hereby

ORDERED that the defendant's motion to dismiss is GRANTED with respect to the plaintiff's facial challenge to the defendant's policy on selection board membership and DENIED in all other respects; further, it is

ORDERED that the plaintiff's facial challenge to the defendant's policy on selection board membership is DISMISSED WITH PREJUDICE; further, it is

ORDERED that the defendant's motion to extend time filed on November 13, 2000 [12–1] is GRANTED; further, it is

ORDERED that the defendant's motion to extend time filed on November 15, 2000 [14–1] is GRANTED; further, it is

ORDERED that the plaintiff's to extend time filed of November 27, 2000 [16–1] is GRANTED; further, it is

ORDERED that the plaintiff's motion to consolidate [2–1] is DENIED; further, it is

ORDERED that the parties shall, within 10 days of this date, confer pursuant to Local Civil Rule 16.3 and provide a report and proposed scheduling order to govern further proceedings.

SO ORDERED.