**G. Allan SIRMANS, Plaintiff,**

v.

**Les BROWNLEE, Acting Secretary of the Army, Defendant.**

**No. CIV.A.00–1135(RCL).**

United States District Court, District of Columbia.

Nov. 15, 2004.

Christopher Alexander Sterbenz, Vienna, VA, for Plaintiff and Defendant.

Herbert Emerson Forrest, U.S. Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case concerns the defendant, the Acting Secretary of the Army ("Army"), and alleged discrimination in the Army's

officer promotion practices. Before the Court are Plaintiff's Motion [46] for Summary Judgment and Defendant's Further Renewed Motion [50] to Dismiss, or for Judgment on the Pleadings, or for Summary Judgment. Additionally before the Court is Plaintiff's Motion [59] to Amend the First Amended Complaint to Correct Typographical Error. For the reasons stated herein, plaintiff's motion to amend is granted and the parties' dispositive motions are granted in part and denied in part.

## I. *Background*

At times relevant to this case, plaintiff G. Allan Sirmans, a Native American male, was a Lieutenant Colonel of the U.S. Army Judge Advocate General Corps serving on active duty. Plaintiff's performance was superlative, at least according to his supervisor and superior, Major General Roger G. Thompson, Jr. Major General Thompson's performance review glows:

> An absolute must selection for promotion to O6 [Colonel]. I'm personally convinced that LTC Sirmans will make a superlative JAG Colonel and potential general officer. Ready for a leadership position within the Judge Advocate General's Corps now. An absolutely superb JAG officer and among the top 1 percent of all with whom I've served. LTC Sirmans' management and leadership skills are absolutely outstanding and usually found only in officers much his senior. A must selection for senior service school. Assign as a major installation Staff Judge Advocate, Corps Staff Judge Advocate or division chief in the Office of the Judge Advocate General."

Supp. AR 52.

The Colonel, Judge Advocate General's Corps, Promotion Selection Boards for 1996, 1997, 1997 (August), 1998, and 1999 each considered plaintiff for promotion to Colonel. While each board found plaintiff, and all others under consideration, fully qualified for promotion, none of the boards selected plaintiff for promotion. Each of these boards was composed, pursuant to Deputy Chief of Staff for Personnel instructions, of at least one female and at least one minority. The boards operated under similar equal opportunity instructions as set forth in Department of the Army Memo. 600–2, issued in November 1993 [hereinafter DA Memo.]. These instructions called on the boards to "achieve a selection rate" for minorities and for women "not less than the selection rate for all officers in the promotion zone (first time considered)." DA Memo. § A–2. Board members are to be alert to these goals during the initial review, DA Memo. § 10(a), and during a review and revote procedure should the board fail to achieve a selection rate for women or a particular minority, *id.* § A–10(c)(3)(a). *See generally Saunders v. White*, 191 F.Supp.2d 95, 124, 137 (D.D.C.2002) (discussing the policy at length).

In 2001, the Court dismissed plaintiff's facial challenge to the boards' composition, but held open the possibility that an as-applied challenge could be brought with respect to any of the boards. *Sirmans v. Caldera*, 138 F.Supp.2d 14 (D.D.C.2001). The Court refused to dismiss plaintiff's challenge based on the Army's equal opportunity instructions for the 1996, 1998, and 1999 boards.[1] *Id.*

## II. *Plaintiff's Motion to Amend the Complaint*

The pleadings and other filings in this case have routinely mislabeled promotion

---

1. The Court, following the parties' lead, mislabeled the 1998 board as the 1999 board and the 2000 board as the 1999 board.

boards with the wrong year. Plaintiff has moved to amend his complaint to, at long last, reflect the true identity of the boards whose composition and promotion practices he wishes to challenge. He wishes to put into play the 1998 and 1999 boards, not the 1999 and 2000 boards. The Army protests that the amendment comes too late and that, in adding some years and removing others, the amendment is substantive. Given that the parties have conducted discovery with respect to each of these boards and made arguments concerning each, that the Court is able to rule on the challenges brought against each of these boards, and that the Court believes no prejudice will result, the Court grants plaintiff's motion to amend.

### III. *Army's Arguments for Dismissal*

#### A. The Settlement Agreement

In 1998, plaintiff filed in this Court Civil Action 98–278, a related suit against the Army alleging discrimination by the 1997 and 1997 (August) promotion boards. Plaintiff and the Army chose to settle the claims by an out-of-court Settlement Agreement and Release ("Agreement") dated June 15, 1999. The agreement required the Army to provide plaintiff reconsideration by up to three Special Selection Boards ("SSB"s), each using non-discriminatory, agreed-upon instructions. The first SSB would act as the 1997 board. If it non-selected plaintiff, a second board, acting as the 1997 (August) board, would consider plaintiff. If it also non-selected plaintiff, a third board, acting as the 1998 [2] board would consider plaintiff. Agreement ¶¶ 2–3. The Agreement then provided benefits to plaintiff regardless of whether a board eventually selected him or not.

Agreement ¶¶ 5–6, 7. In turn, the Agreement required plaintiff to

> warrant and represent that no other action or suit with respect to the claims alleged in his complaint in this case are pending or will be filed in, or submitted to, any court, administrative body, or legislative body . . . .

Agreement ¶ 10.

In an earlier Memorandum Opinion issued in this case, *Sirmans*, 138 F.Supp.2d at 20–21, this Court construed the Agreement to permit as-applied challenges to the composition of the Army's selection boards for 1996, 1997 and 1997 (August). Now, the issue is to what extent the Agreement precludes challenges based on the Army's equal opportunity instructions. According to the Army, the Agreement precludes challenges based on the instructions given to the 1996–1998 boards. In determining the scope of this Agreement, the Court previously determined that the Agreement was wholly extra-judicial and that it must therefore be interpreted according to familiar principles of contract law. *See id.* at 20.

The Agreement has some inconsistency. While it purports to settle only instruction claims alleged in the complaint—only claims related to the instructions given to the 1997 and 1997 (August) boards—the Agreement provided relief related to not just these two boards, but also the 1998 board. It seems inconceivable that the parties would agree on relief related to three boards but only intend to settle claims related to two of them. In support of this conclusion, the plaintiff's First Amended Complaint excludes claims based on instructions for three boards: 1997,

---

**2.** Though the Agreement speaks of a 1999 board, the parties have since agreed that they

intended to refer to the 1998 board.

1997 (August), and 1998.[3] And in an earlier motion to dismiss, the plaintiff concedes that the Agreement covers challenges based on instructions given to these three boards. (Pl. Opp. to Def. Mot. to Dismiss, Jan. 9, 2001 at 4 n. 4.). Based on the contents of the Agreement, the behavior of the parties, and the concession of the plaintiff, the Court concludes that the agreement covers the 1997, 1997 (August), and 1998 boards and prevents plaintiff's challenges based on instructions to these boards. These challenges must be dismissed.

■ The 1996 board is another matter. This board is neither mentioned in the settled complaint nor mentioned or provided for in the Agreement: there is simply "[n]o provision in the written settlement agreement." *Hatcher v. Office of Comptroller of Currency*, 631 F.2d 985, 987 (D.C.Cir.1980); *see Sirmans*, 138 F.Supp.2d at 20. There is no indication that the parties ever contemplated the merits of the 1996 claims or intended to resolve them in the Agreement. The 1996 claims, unlike the others in that case and this case, involves the issue of plaintiff being "under the zone" for promotion, which gives these claims a distinctive character. The Agreement, therefore, does not preclude challenges related to the 1996 board.[4]

**3.** Plaintiff later clarified, even before the pending motion to amend the complaint, that though the complaint reads 1999, it ought to read 1998. The mistake apparently mirrors the already-mentioned mistake in the Agreement. "Similarly, the exclusion of the 'FY 1999 Board' in the first amended complaint should refer instead to the 'FY 1998 Board.'" Pl. Opp. to Def. Mot. to Dismiss, Jan. 9, 2001 at 4 n. 4.

**4.** Alternative to its argument about the Agreement, the Army argues that plaintiff's claims relating to the 1996–1998 promotion boards' practices are moot because the Army con-

## B. Standing

Next, the Army urges that plaintiff, a Native American male, lacks standing to complain about the selection boards' adherence to Army alleged discrimination against Caucasians and males. The Army points out that Native Americans, as one category of racial minority, actually benefitted from the Army's equal opportunity instructions. Plaintiff asserts standing based both on his status as a male and on a theory of third-party standing—that is, on a theory that plaintiff can make claims of discrimination on behalf of Caucasians even though he is Native American.

■ Plaintiff's assertion of third-party standing on behalf of Caucasians is untenable. Courts permit plaintiffs to assert the rights of third parties in the limited situations where the plaintiff himself has suffered an injury in fact, where the plaintiff has a close relation to the third party, and where there exists a hindrance to the third party acting to protect his own interests. *Powers v. Ohio*, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). There is clearly no hindrance to Caucasians suing on their own behalf. This Court has had several cases in which Caucasians challenged the promotion practices of various Army selection boards. *See, e.g., Saunders*, 191 F.Supp.2d *passim*. While it is true that "any person, of what-

ducted Special Selection Boards ("SSB"s) pursuant to the Agreement, that these boards denied plaintiff promotion under agreed, non-discriminatory instructions, and that because these board decisions stand in place of the original decisions. In *Saunders*, the Court found SSB decisions did not moot claims when the Army provided the SSBs at its own behest. In this case, however, plaintiff voluntarily accepted the SSBs and agreed on the instructions, which did not happen in *Saunders*. Therefore, the Army's mootness argument would also succeed.

ever race, has the right to demand that any government actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment", *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995), that person still must first meet the constitutional and prudential standing requirements of the federal courts.

■ Plaintiff's assertion of standing based on his status as a male, however, does have merit. The Army's equal opportunity policy separately promoted both minorities and women while separately injuring both Caucasians and men. To illustrate why a Native American male, a minority, has standing to assert the rights of men, consider the simplistic case where a selection board must consider a Native American male and a Native American woman. The Army policy would lead a selection board to treat a Native American male and an Native American women differently. Selecting a Native American male would help the Army reach one numerical goal, the goal for promotions of Native Americans. Selecting a Native American female would help the Army reach two numerical goals, the goal for promotion of Native Americans and the goal for promotion of women. Even if the woman were Caucasian, a somewhat more complex scenario, the Native American male would still be injured if, at the time, the Army policy and promotion statistics showed that promoting a woman would be more helpful to reaching the Army's goals than promoting a Native American, perhaps because other Native Americans under consideration had been promoted first. Based on this analysis, the Court concludes that plaintiff, as a male, has been sufficiently injured to permit standing.

## C. Plaintiff's Due Process Claim

■ Plaintiff alleges that the Army violated his Fifth Amendment constitutional right to both due process of the law and equal protection of the law. The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." *U.S. Const.* Amend. V. The Fifth Amendment's Due Process Clause makes the Fourteenth Amendment's guarantee of equal protection applicable to federal entities, not just the state entities mentioned explicitly in the Fourteenth Amendment's text. *See Adarand*, 515 U.S. at 204, 115 S.Ct. 2097; *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

■ Insofar as plaintiff's equal protection challenge depends on the Fifth Amendment's Due Process Clause, plaintiff's challenge cannot be dismissed. However, the Court holds that plaintiff cannot maintain a so-called "procedural" due process claim challenging the absence or level of process given to plaintiff during consideration of his promotion. First, it does not appear from the Complaint that plaintiff makes such a challenge. Moreover, our Circuit Court makes it "clear that military promotion decisions *simpliciter* are not susceptible to due process challenges, inasmuch as there exists no property or liberty interest in a military promotion through the selection boards." *Blevins v. Orr*, 721 F.2d 1419, 1421–21 (D.C.Cir.1983).

## IV. *The Army's Argument for Summary Judgment as to Plaintiff's As–Applied Challenges*

■ As already noted, the Court, back in 2001, dismissed plaintiff's facial challenge to the boards' composition, but held open the possibility that an as-applied challenge could be brought with respect to any of the boards. *Sirmans*, 138 F.Supp.2d at 20–21. The Court might con-

sider selection board membership in the context of such things as promotion rates and individual intent. Now, after the accumulation of evidence and a period of three years, the Army moves for summary judgment on the as-applied challenges. First, the Army cites promotion rates from 1996–1999 that show that, on the whole, far more Caucasians and males were selected than their minority and female counterparts. Next, the Army argues that there is no evidence showing any kind of wrongful persuasion by board members. It does cite the certification of results that board members sign. This certification affirms that "to the best of their knowledge, the board [was] . . . not subject to or aware of any censure, reprimand, or admonishment about the recommendations of the board." *See, e.g.,* AR 75. Plaintiff offers no reply. Accordingly, based on the record in the case and plaintiff's non-opposition, the Army is entitled to summary judgment and the plaintiff's as-applied challenges to board composition must fail.

V. *Plaintiff's Motion for Summary Judgment on the Equal Opportunity Instructions*

Plaintiff moves for partial summary judgment and asks this Court to declare unconstitutional the Army's equal opportunity instructions given to the 1996, 1998, and 1999 boards. As just determined, plaintiff may only challenge the practices of the 1996 and the 1999 boards and he must challenge these practices as a male, not as a minority.

■ Plaintiff easily makes out his prima facie case that the equal opportunity instructions to both the 1996 and 1999 boards violate the constitution. In *Saun-*

*ders,* this Court held that materially identical equal opportunity instructions were facially unconstitutional. The instructions, which set numerical goals for promotion of women, violated the Fifth Amendment right to equal protection because they favored women during both the initial consideration and the review procedure without connection to an important government interest as required by intermediate scrutiny. *Saunders,* 191 F.Supp.2d at 124; *see also United States v. Virginia,* 518 U.S. 515, 532–33, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). The Army's sole argument in the face of *Saunders* is that *Saunders* involved a Caucasian, not a minority like plaintiff. This argument rehashes the Army's standing argument and fails to comprehend that plaintiff, as a male, can claim the benefit of *Saunders* regardless of his race.

■ Even when the government imperishably discriminates, as the Army did here, it may "avoid liability by proving that it would have made the same decision without the impermissible motive." *Texas v. Lesage,* 528 U.S. 18, 21, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999).[5] The proof must be by a preponderance of the evidence. *Mt. Healthy City Bd. of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), *cited by Lesage,* 528 U.S. at 21, 120 S.Ct. 467. The Army does not raise this defense with respect to the 1999 board, and therefore, for that board, plaintiff must be granted summary judgment. However, the Army seems to raise the defense with respect to the 1996 Board. In 1996, plaintiff was "below the zone." This means that plaintiff had not yet served the three years required, absent a

---

5. This is true, but only so long as a plaintiff does not seek forward-looking relief to stop an ongoing program of discrimination. *Lesage,* 528 U.S. at 21–22, 120 S.Ct. 467. Here, the Army's policy became race and gender neutral in September 1999, (Miller Decl. ¶ 14.), and so plaintiff only can seek relief related to past injuries.

waiver, for consideration for a promotion. That year, the Army notes, the board did not select a single one of the 31 below-the-zone candidates for promotion. Nor did the board review or revote any officer's file. Among the 31 below-the-zone candidates, three were labeled Black and two were labeled female. AR 69. In this limited circumstance—where plaintiff was considered before his candidacy for promotion became ripe and where the board passed over every single below-the-zone candidate, including minorities and women—the Army's defense prevails. It has shown by a preponderance of the evidence that plaintiff's non-selection would have occurred absent the equal opportunity instructions.

## VI. *Conclusion and Remedy*

Based on the foregoing, all of plaintiff's claims related to board composition are dismissed with prejudice; plaintiff's claims related to the instructions given to the 1996, 1997, 1997 (August), and 1998 boards are dismissed with prejudice; but plaintiff's claim related to the instructions given to the 1999 board succeeds and plaintiff is entitled to summary judgment on that claim. Plaintiff has requested that, for each illegal promotion board, the Army administer a Special Selection Board to reconsider plaintiff without the equal opportunity instructions. The Court deems this relief proper and will order such a board to act in place of the 1999 board. An order consistent with this Memorandum Opinion shall issue this date.

## ORDER

After considering the record in the case in connection with Plaintiff's Motion [46] for Summary Judgment; Defendant's Further Renewed Motion [50] to Dismiss, or for Judgment on the Pleadings, or for Summary Judgment; and Plaintiff's Motion [59] to Amend the First Amended Complaint to Correct Typographical Error, it is, consistent with a Memorandum Opinion issued in this case on this date, hereby:

ORDERED that Plaintiff's Motion [59] to Amend the First Amended Complaint to Correct Typographical Error is GRANTED.

ORDERED that Plaintiff's Motion [46] for Summary Judgment and Defendant's Further Renewed Motion [50] to Dismiss, or for Judgment on the Pleadings, or for Summary Judgment are both GRANTED IN PART and DENIED IN PART.

ORDERED that defendant administer a Special Selection Board to stand in the place of The Colonel, Judge Advocate General's Corps, Promotion Selection Boards for 1999 and that this Special Selection Board use non-discriminatory, neutral instructions in place of the unlawful equal opportunity instructions used in 1999.

ORDERED that if the court-ordered Special Selection Board selects plaintiff for promotion, defendant shall change plaintiff's records to reflect promotion by the original 1999 board.

ORDERED that plaintiff be denied relief with respect to his other claims and that this case be DISMISSED WITH PREJUDICE.

SO ORDERED.