TEXAS ET AL. *v.* LESAGE ET AL.

No. 98–1111.  Decided November 29, 1999

PER CURIAM.

Respondent François Daniel Lesage, an African immigrant of Caucasian descent, applied for admission to the Ph.D. program in counseling psychology at the University of Texas' Department of Education for the 1996–1997 academic year. In the year Lesage applied, the school received 223 applications for the program and offered admission to roughly 20 candidates. App. to Pet. for Cert. A–22. It is undisputed that the school considered the race of its applicants at some stage during the review process. The school rejected Lesage's application and offered admission to at least one minority candidate. Lesage filed suit seeking money damages and injunctive relief. He alleged that, by establishing and maintaining a race-conscious admissions process, the school had violated the Equal Protection Clause of the Fourteenth Amendment and Rev. Stat. § 1977, 42 U. S. C. § 1981, Rev. Stat. § 1979, as amended, 42 U. S. C. § 1983 (1994 ed., Supp. III), and 78 Stat. 252, 42 U. S. C. § 2000d.

Petitioners sought summary judgment, offering evidence that, even if the school's admissions process had been completely colorblind, Lesage would not have been admitted. At least 80 applicants had higher undergraduate grade point averages (GPA's) than Lesage, 152 applicants had higher Graduate Record Examination (GRE) scores, and 73 applicants had both higher GPA's and higher GRE scores. App. to Pet. for Cert. A–23. In an affidavit, Professor Ricardo Ainslie, one of two members of the school's admissions committee, stated that Lesage's personal statement indicated that he had "'a rather superficial interest in the field with a limited capacity to convey his interests and ideas,'" and that his letters of recommendation were "weak." *Id.*, at A–24. Ainslie stated that Lesage's application was rejected early in the review process, when the committee was winnowing the full application pool to a list of 40. *Ibid.* The District Court concluded that "any consideration of race had no effect

on this particular individual's rejection," and that there was "uncontested evidence that the students ultimately admitted to the program ha[d] credentials that the committee considered superior to Plaintiff's." *Id.*, at A–26 to A–27. It therefore granted summary judgment for petitioners with respect to all of Lesage's claims for relief.

The Court of Appeals for the Fifth Circuit reversed. 158 F. 3d 213 (1998). The court did not review the District Court's conclusion that there was no genuine issue as to whether the school would have rejected Lesage under a colorblind admissions process. Instead, it held that such a determination was "irrelevant to the pertinent issue on summary judgment, namely, whether the state violated Lesage's constitutional rights by rejecting his application in the course of operating a racially discriminatory admissions program." *Id.*, at 222. An applicant who was rejected at a stage of the review process that was race conscious, the court reasoned, has "suffered an implied injury"— the inability to compete on an equal footing. *Ibid.* Because there remained a factual dispute as to whether the stage of review during which Lesage's application was eliminated was in some way race conscious, the court held that summary judgment was inappropriate and remanded the case for trial. *Ibid.*

Insofar as the Court of Appeals held that summary judgment was inappropriate on Lesage's § 1983 action seeking damages for the school's rejection of his application for the 1996–1997 academic year even if petitioners conclusively established that Lesage would have been rejected under a race-neutral policy, its decision is inconsistent with this Court's well-established framework for analyzing such claims. Under *Mt. Healthy City Bd. of Ed.* v. *Doyle,* 429 U. S. 274 (1977), even if the government has considered an impermissible criterion in making a decision adverse to the plaintiff, it can nonetheless defeat liability by demonstrating that it would have made the same decision ab-

sent the forbidden consideration. See *id.*, at 287. See also *Crawford-El* v. *Britton*, 523 U. S. 574, 593 (1998); *Board of Comm'rs, Wabaunsee Cty.* v. *Umbehr*, 518 U. S. 668, 675 (1996). Our previous decisions on this point have typically involved alleged retaliation for protected First Amendment activity rather than racial discrimination, but that distinction is immaterial. The underlying principle is the same: The government can avoid liability by proving that it would have made the same decision without the impermissible motive.

Simply put, where a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it is undisputed that the government would have made the same decision regardless, there is no cognizable injury warranting relief under § 1983.

Of course, a plaintiff who challenges an ongoing race-conscious program and seeks forward-looking relief need not affirmatively establish that he would receive the benefit in question if race were not considered. The relevant injury in such cases is "the inability to compete on an equal footing." *Northeastern Fla. Chapter, Associated Gen. Contractors of America* v. *Jacksonville*, 508 U. S. 656, 666 (1993). See also *Adarand Constructors, Inc.* v. *Peña*, 515 U. S. 200, 211 (1995). But where there is no allegation of an ongoing or imminent constitutional violation to support a claim for forward-looking relief, the government's conclusive demonstration that it would have made the same decision absent the alleged discrimination precludes any finding of liability.

Lesage's second amended complaint sought injunctive relief and alleged that petitioners "have established *and are maintaining*, under color of the laws of the State of Texas, an affirmative action admissions program at the College of Education that classifies applicants on the basis of race and ethnicity." App. to Pet. for Cert. A–22 (emphasis added). But in deciding that summary judgment was improper, the Court of Appeals did not distinguish between Lesage's retrospective claim for damages and his forward-

22

looking claim for injunctive relief based on continuing discrimination. Further, in their petition for certiorari, petitioners assert that "[t]he case at bar differs from *Adarand* because there is no allegation that the department of counseling psychology continues to use race-based admissions subsequent to the Fifth Circuit's *Hopwood* v. *State of Texas*[, 78 F. 3d 932, cert. denied, 518 U. S. 1033 (1996),] decision." Pet. for Cert. 13. The brief in opposition does not contest this statement. It therefore appears, although we do not decide, that Lesage has abandoned any claim that the school is presently administering a discriminatory admissions process.

Insofar as the Court of Appeals held that petitioners were not entitled to summary judgment on Lesage's § 1983 claim for damages relating to the rejection of his application for the 1996–1997 academic year even if he would have been denied admission under a race-neutral policy, its decision contradicts our holding in *Mt. Healthy*. We therefore grant the petition for writ of certiorari and reverse the judgment of the Court of Appeals in this respect.

Lesage also asserted claims under 42 U. S. C. §§ 1981 and 2000d. Whether these claims remain, and whether Lesage has abandoned his claim for injunctive relief on the ground that petitioners are continuing to operate a discriminatory admissions process, are matters open on remand. The case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*