*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0061P (6th Cir.)
File Name: 02a0061p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

Nos. 00-5227/5451
RUSSELL AIKEN, et al.,
                    *Plaintiffs,*

FRANK AMATO; KENNON
CARLTON; TAMMY
CLEVENGER; JAMES
COATNEY; PAUL KEATING;
RUSSELL LOLLAR; FREDERICK
SANSOM; DANA STINE;
ROBERT STONE; JAMES
WILEY; JOHN WRIGHT,
        *Plaintiffs-Appellants
        (00-5227/5451),*

        *v.*

RICHARD C. HACKETT,
Individually and in his
Official Capacity as Mayor;
JAMES IVY, Individually and
in his Official Capacity as
Director of Police; and the
CITY OF MEMPHIS,
        *Defendants-Appellees.*

Nos. 00-5227/
5228/5451/5452

1

Nos. 00-5228/5452
DON BOYD, et al.,
                              *Plaintiffs,*


WILLIAM ASHTON; KENNON
CARLTON; DANNY CARTER;
JAMES COATNEY; STEPHEN
COMELLA; BILLY GARRETT;
THOMAS HELLDORFER;
RICHARD KITCHENS; GEORGE
MAXWELL;  FREDERICK
SANSOM; DALE SIMMS; TOM
SIMMONS; DANA STINE; ROY
TIDWELL; JAMES WRIGHT,
          *Plaintiffs-Appellants
              (00-5228/5452),*


            *v.*


CITY OF MEMPHIS,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
Nos. 89-02863; 90-02069—Jerome Turner, District Judge.

Argued:  June 7, 2001

Decided and Filed:  February 19, 2002

Before:  KEITH, BATCHELDER, and MOORE, Circuit
Judges.

Appellants' composite scores (not the City's affirmative action program) kept them from being promoted.  Moreover, the Appellants sought no forward-looking relief that would allow them to compete on an equal footing.  That is, the Appellants do not allege the City's promotion system continues to disadvantage them in competing for promotions; they do not suggest that they now seek to level the playing field.  Appellants have failed to allege an injury in fact and they therefore lack standing to pursue this action. Accordingly, we AFFIRM the judgment of the district court.

*Jacksonville*, 508 U.S. 656, 663 (1993).  We review *de novo* a district court's ruling that a litigant could not plead or prove Article III standing.  *See Am. Fed'n of Gov't Employees v. Clinton*, 180 F.3d 727, 729 (6th Cir. 1999) ("A party's standing is a question of law reviewed *de novo*.").

When plaintiffs allege a violation of the Equal Protection Clause in the context of a government program, courts must evaluate whether the claimed injury is one that invades a legally protected interest.  If the plaintiffs allege that a racial preference cost them some benefit under a government program, those plaintiffs may have alleged an injury in fact. But if those same plaintiffs cannot also allege and show that "under a race-neutral policy" they would have received the benefit, those plaintiffs have not alleged an injury in fact because they have not alleged an invasion of some interest that the law protects.  *Texas v. Lesage*, 528 U.S. 18, 20 (1999), *rev'g* 158 F.3d 213 (5th Cir. 1998).  Those plaintiffs lack Article III standing.  *See Northeastern Fla. Chapter, Associated Gen. Contractors of Am.*, 508 U.S. at 666; *Lesage*, 528 U.S. at 20.

If, however, the plaintiffs allege some kind of on-going constitutional violation and seek forward-looking relief to level the playing field, then the plaintiffs need only show that the racial preference hinders their ability to "compete on an equal footing."  That plaintiffs would not have received the benefit even absent the preference is irrelevant to an Equal Protection analysis.  *See Lesage*, 528 U.S. at 21 (citing *Northeastern Fla. Chapter, Associated Gen. Contractors of Am.*, 508 U.S. at 666).

The Appellants here have failed to allege the invasion of a right that the law protects.  They  have neither alleged nor shown that the City would have promoted them if the City had used a race-neutral system in its promotions of police officers.  Phrased differently, it appears beyond debate that absent the forbidden criterion used by the City, the Appellants still would not have been promoted to sergeant.  The

—————————

### COUNSEL

**ARGUED:**  David M. Sullivan, Memphis, Tennessee, for Appellants.   Louis P. Britt III, FORD  &  HARRISON, Memphis, Tennessee, for Appellees. **ON BRIEF:** David M. Sullivan, Memphis, Tennessee, for Appellants. Louis P. Britt III, Delaine R. Smith, FORD  &  HARRISON,  Memphis, Tennessee, for Appellees.

—————————

### OPINION

—————————

ALICE M. BATCHELDER, Circuit Judge.  Appellants are (or were) police officers for the City of Memphis, Tennessee (the "City").  Appellants are white.  They appeal the district court's entry of partial summary judgment against them in this case about the City's affirmative-action program and police promotions.   The  federal  district  court  entered  partial summary judgment for the City because the court concluded that Appellants could not show the injury in fact necessary for Article III standing.  That judgment became final when the district court entered an order dismissing the case in its entirety.  We agree with the district court's reasoning and conclusion, and thus, we AFFIRM the district court's grant of partial summary judgment against the Appellants.

### BACKGROUND

This appeal ends a long and bitter legal battle over how the City's affirmative-action program affected promotions in the City's police department.  *See generally Aiken v. City of Memphis*, 37 F.3d 1155 (6th Cir. 1994); *Ashton v. City of Memphis*, 1996 WL 748163 (6th Cir. Dec. 30, 1996).  The City conceded that some plaintiffs had actually suffered an injury in fact; the City settled with those plaintiffs. Remaining  are  a  group  of  Appellants—the  *Ashton*

plaintiffs—who were plaintiffs in *Ashton v. City of Memphis*, and a group of Appellants—the *Aiken* plaintiffs—who were plaintiffs in *Aiken v. City of Memphis*. Those cases ultimately were consolidated, and the City has not offered to settle with these plaintiffs.

The *Ashton* plaintiffs' case began in 1988 when the City had seventy-five openings for the rank of sergeant. Two hundred and ten officers competed for those seventy-five slots. The officers were ranked based upon what the parties call a composite score. The composite score was an amalgam of a weighted score from: (1) a hundred-question multiple-choice written test; (2) a performance-evaluation score; (3) an oral interview; and (4) seniority points.

The City created a list of competitors, ranking the 210 officer-competitors in descending order based solely upon each competitor's composite score. Thus, the officer with the highest composite score was listed first, and the officer with the lowest composite score was listed two hundred and tenth. Seven African-American officers scored within the top seventy-five. None of the *Ashton* plaintiffs did.

Citing two consent decrees entered in the decades-long litigation, the City concluded that it must promote twenty-six black officers to the rank of sergeant. The City achieved this goal by promoting the seven who had scored in the top seventy-five and nineteen who had not. As a result, nineteen white officers whose scores placed them in the top seventy-five composite scores were "bumped" or were refused promotions. Because none of the *Ashton* Appellants in this case scored in the top seventy-five, none of the Appellants were bumped.

The *Aiken* plaintiffs' case began in 1989, when another ninety-four slots opened up for sergeant. One hundred seventy-seven officers competed for those slots. Again, the City tallied composite scores for each competitor. Fifteen African-American candidates achieved composite scores that

placed among the top ninety-four. Again, the City bumped white officers whose scores were among the top ninety-four in order to promote thirty-three black officers including eighteen whose scores fell outside the top ninety-four. None of the *Aiken* Appellants scored within the top ninety-four.

The district court concluded that these plaintiffs lacked Article III standing because they could not show that they would have been promoted had the City not used a system of racial quotas. The following two excerpts from the district court's opinion summarize the district court's rationale:

> Plaintiffs do not dispute, and have offered no evidence, that absent the City's use of affirmative action the promotions would have been made other than in accordance with strict rank-order.

> \*          \*          \*

> The court finds that the evidence in the record shows that the plaintiffs in question were not ranked high enough to be considered for promotions absent the City's use of affirmative action. Accordingly, the court finds that under *Brunet* those plaintiffs are without standing to sue.

*Ashton v. City of Memphis*, No. 89-2863-TUA, Order On Defendants' Motion For Partial Summary Judgment at 10 & 11 (W.D. Tenn. filed Nov. 17, 1998) (citing *Brunet v. City of Columbus*, 1 F.3d 390 (6th Cir. 1993)).

### DISCUSSION

To establish Article III standing, a litigant must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). For purposes of an Article III standing analysis, an injury in fact means "an invasion of a legally protected interest[.]" *Northeastern Fla. Chapter, Associated Gen. Contractors of Am. v. City of*