Daniel JEAN–GILLES, Plaintiff–Appellant,

v.

COUNTY OF ROCKLAND and C. Scott Vanderhoef, Defendants–Appellees.

Docket No. 04–5609–CV.

United States Court of Appeals, Second Circuit.

Sept. 30, 2005.

Stephen Bergstein, Thornton, Bergstein & Ullrich, LLP, Chester, New York, for Appellant.

John D. Winter, Patterson Belknap Webb & Tyler, LLP, New York, New York, for Appellees.

PRESENT: WINTER, SOTOMAYOR, and WESLEY, Circuit Judges.

## SUMMARY ORDER

Daniel Jean–Gilles appeals from the district court's denial of his motion to set aside the verdict or for a new trial and his request for an injunction against county policies on public speeches by employees. We assume the parties' familiarity with the facts in the case, its relevant procedural history, and the issues on appeal.

In this case, the jury found that Jean–Gilles' public speeches were a substantial factor in the decision not to promote him to the position of Commissioner of Human Rights but that he would have been denied the promotion even had he not made the speeches.[1] Jean–Gilles argues

---

1. Because the jury found the County not lia- ble for First Amendment retaliation, we need

that Ram Nagubandi, the person actually chosen, was not qualified for the position, and that the jury's finding that the County would have taken the same action absent Jean–Gilles' protected speech was speculative.[2] *See Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).[3]

The County sought a candidate for Human Rights Commissioner with *either* four years' experience "involving interpersonal or intergroup relations of a nature which commonly requires training in the social-psychology field," *or* six years' "responsible management experience in a Human Rights agency or in an activity closely related thereto with respect to duties and functions," *or* "any equivalent combination of the above training and experience." Nagubandi had been Vice Chairman of the County's Industrial Development Agency for six years, had served on the Boards of Directors of Leadership Rockland and United Way of Rockland, and was a founding member of Asian Americans of Rockland County (AMOR). During twenty years of work with AMOR, Nagubandi had been both its Chairman and Vice–Chairman, and had helped Rockland County residents negotiate and resolve about thirty cases of alleged employment discrimina-

tion. The jury was entitled to conclude that this experience satisfied the County's requirements.

Furthermore, there was ample evidence in the record that Jean–Gilles had a record of incompetence and insubordination entirely unrelated to his public speech. In particular, the jury could reasonably have relied upon evidence of his failure to process human rights complaints in a timely manner, his refusal to perform basic job functions such as signing letters on behalf of the Commissioner in her absence and his habit of sending hostile, lengthy memos to his supervisors about everything from his job performance to his lunch breaks. In short, the jury had ample reason to conclude the County would not have promoted Jean–Gilles even had he made no public speeches.

■ Jean–Gilles also argues that because his public comments involved racial matters, the jury's finding that he was denied the promotion because of his speech compelled a finding that he was denied the promotion on account of his race. As a matter of logic, this argument is obviously wrong; one can object to speech without objecting to its content. Jean–Gilles cites no case in which any court has made the inference he demands.[4]

not address the County's argument that the Commissioner of Human Rights is a policy-making position not entitled to First Amendment protection.

2. The County argues that Jean–Gilles failed to make a timely and specific motion for judgment as a matter of law raising this argument at trial. *See* Fed.R.Civ.P. 50(b), *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998). Because we find the evidence sufficient to sustain the jury's findings, Jean–Gilles' argument will not prevail regardless of whether he was required to make the specific argument that Nagubandi was unqualified in his Rule 50(b) motion.

3. Jean–Gilles argues that the Civil Rights Act of 1991 altered this test for "mixed-motive"

cases. *See* 42 U.S.C. § 2000e–2(m). But § 2000e–2(m) does not affect the *Mt. Healthy* rule as applied to constitutional claims brought under § 1983. *See Texas v. Lesage*, 528 U.S. 18, 20–21, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999) ("[E]ven if the government has considered an impermissible criterion in making a decision adverse to the plaintiff, it can nonetheless defeat liability by demonstrating that it would have made the same decision absent the forbidden consideration.")

4. Apparently in support of this argument, Jean–Gilles points out that the *Mt. Healthy* defense is unavailable to defendants accused of race discrimination. *See* 42 U.S.C. § 2000e–2(m) ("[A]n unlawful employment

Finally, Jean–Gilles argues that the district court should have granted his request for an injunction against the enforcement of the County's policies on public speech by County employees. The parties disagree whether a post-trial request for injunctive relief that is not included in a pretrial order or a timely Rule 50(b) motion should be reviewed under a "manifest injustice" or an "abuse of discretion" standard.[5] However, even assuming that the "abuse of discretion" standard applies, we agree with the district court's reasoning in denying the injunction and conclude that the trial court's decision in that regard was not an abuse of discretion.

The judgment of the district court is accordingly AFFIRMED.

practice is established when the complaining party demonstrates that race ... was a motivating factor for any employment practice, even though other factors also motivated the practice."). This is true, but of course a plaintiff must still make the initial showing that race was a motivating factor, which the jury properly concluded that Jean–Gilles had failed to do.

5. The County argues that we should apply a "manifest injustice" standard of review to the denial of the injunction, because Jean–Gilles failed to make a timely Rule 50(b) motion requesting the injunction. A party challenging the sufficiency of the evidence on a particular point must make a timely motion for judgment as a matter of law. *Kirsch,* 148 F.3d at 164. But Jean–Gilles' request for injunctive relief was not a challenge to the sufficiency of the evidence. On the contrary, his request *relied upon* the jury's finding that public speech had been a substantial or motivating factor in the failure to promote Jean–

Gilles. Thus, Jean–Gilles argues that we should apply an "abuse of discretion" standard of review to the denial of the injunction because the County knew of the speech policy, discussed it at trial, and therefore would not be prejudiced through unfair surprise. "[A] court may permit the pretrial order to be amended when the danger of surprise or prejudice to the opposing party is small and a failure to amend might result in an injustice to the moving party." *Potthast v. Metro–North R.R. Co.,* 400 F.3d 143, 154 (2d Cir. 2005) (quoting 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1527 (2d ed.1990)). However, the speech policy was only briefly mentioned and was not the focus of plaintiff's case. Thus, as the district court pointed out, the "defendants were not on notice that they were facing the possible entry of injunctive relief based on a County policy, and did not necessarily gear their proof toward the issues that would be germane in such a lawsuit."