CALLAHAN, Circuit Judge,
concurring in part and dissenting in part:
I concur in the panel majority’s finding that the Bearcrane Family Members lack standing to bring substantive due process and treaty-based claims in their individual capacities. However, based on the allegations contained in their complaint, I would hold that the Bearcrane Family Members lack standing to assert equal protection claims in their individual capacities. Accordingly,' I would affirm the district court’s' decision dismissing the claims brought by the Bearcrane Family Members in their individual capacities for lack of standing, and therefore respectfully dissent. Moreover, I would affirm the district court’s finding that the Bearcrane Family Members failed to plausibly allege an equal protection claim in them individual capacities against the FBI.
The Bearcrane Family Members assert that they have standing to bring equal protection claims in their individual capacities based on two alleged injuries, First, they contend that Defendants’ failure to investigate Steven Bearcrane’s, death de *607 nied them access to crime victims’ assistance programs. If the death is not classified as a “crime,” the Bearcrane Family Members are ineligible to receive benefits under various crime victims’ rights statutes. Second, they argue that Defendants’ failure to provide adequate law enforcement services to Native Americans, including them, has denied them the same “basic safety” enjoyed by non-Native Americans. Based on these alleged injuries, the Bear-crane Family Members brought claims in their individual capacities against the FBI, Agent Weyand in his official capacity and his individual capacity, and Agent Oravec in his individual capacity. The majority finds the first injury sufficient to confer standing. Mem Dispo at 2-3. I am not insensitive to the Bearcrane Family Members’ loss, but they do not have standing to bring an equal protection claim arising from their denial of access to possible statutory benefits.
In finding that the Bearcrane Family Members have standing to assert an equal protection claim based on the denial of benefits under the victims’ rights statutes, the majority relies on Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). See Mem Dispo at 3. But that case recognized that the injury in fact “in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of [a] barrier....” 508 U.S. at 666, 113 S.Ct. 2297. In City of Jacksonville, the “barrier” at issue was a government program which awarded a certain percentage of contracts to minority-owned businesses. Id. at 658, 113 S.Ct. 2297. In finding that the plaintiffs had standing to challenge this “barrier,” City of Jacksonville looked to several other cases that found standing based on the inability to be considered for a government benefit. In Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), the “barrier” was a “Georgia law limiting school board membership to property owners....” 508 U.S. at 664, 113 S.Ct. 2297. In Clements v. Fashing, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), the “barrier” was a “provision of the Texas Constitution, which require[d] the immediate resignation of some (but not all) state officeholders upon their announcement of a candidacy for another officer.” 508 U.S. at 664, 113 S.Ct. 2297. And in Regents of the University of California v. Bakke, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), the “barrier” was “a medical school’s admissions program, which reserved 16 of the 100 places in the entering class for minority applicants....” 508 U.S. at 665, 113 S.Ct. 2297. We have applied the City of Jacksonville standing analysis “[w]hen a plaintiff brings an equal protection challenge to a race-conscious program and seeks forward-looking relief....” Carroll v. Nakatani, 342 F.3d 934, 941 (9th Cir. 2003). In such cases, “the injury is not the inability to obtain the benefit, but the inability to compete on an equal footing.” Id. (citing City of Jacksonville, 508 U.S. at 666, 113 S.Ct. 2297; Texas v. Lesage, 528 U.S. 18, 21, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999)).
In Barnes-Wallace v. City of San Diego, 530 F.3d 776 (9th Cir. 2008), we applied this standing analysis to assess whether plaintiffs—an .agnostic couple and a lesbian couple—had standing to challenge the validity of a government contract with a corporation chartered by the Boy Scouts, a group whose policies expressly excluded lesbians and agnostics. Id. at 780, 787. Based on their objections to the Boy Scouts’ stated policies, the plaintiffs would not use the facilities leased and operated by the corporation. Id. at 780-81, 784. The court found that the plaintiffs did not have standing based on the “policy of granting *608 preferential access to the Boy Scouts” to use facilities leased from the City of San Diego because the plaintiffs had no plans to apply for access to those facilities. Id. at 787; see also Barnes-Wallace v. City of San Diego, 704 F.3d 1067, 1085 (9th Cir. 2012).
These cases do not support the Bear-crane Family Members’ standing to bring equal protection claims in their individual capacities. In each, the “discriminatory barrier” at issue was a policy or program that expressly preferred one group over another. The government action at issue here, however, is not part of such a program or policy. Instead, the alleged “discriminatory barrier” results from the FBI administering its cases in a manner which allegedly deprived the Bearerane Family Members of the ability to apply for benefits of certain victims’ rights statutes. Whatever claims the Bearerane Family Members might have, if any, are not the result of any “discriminatory barrier” of the sort giving rise to an equal protection claim. Holding otherwise jams a square peg into a round hole, and distorts this Circuit’s standing jurisprudence.
Moreover, the claims brought by the Bearerane Family Members in their individual capacities do not otherwise satisfy the requirements of our Article III standing analysis. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Bear-crane Family Members’ alleged injury is the curtailment of the opportunity to seek benefits under the victims’ rights statutes as the result of the FBI’s administration of its cases. This alleged injury is neither “concrete and particularized,” nor is it “likely to be redressed by a favorable decision of this court.” Id. Indeed, even if it were ultimately determined that Defendants interfered with the Bearerane Family Members’ ability to seek benefits under these statutes in violation of their equal protection rights under the Fifth Amendment, such a decision would not give them the benefits of these statutes, or even the opportunity to seek such benefits, because the court could not direct Defendants to classify Steven Bearcrane’s death as a crime.
Nor is there a sufficient “causal connection between the injury and the conduct complained of,” such that the Bearerane Family Members’ alleged injury is “fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.” Id. at 560-61, 112 S.Ct. 2130 (internal alterations and quotations omitted). To the contrary, even if the FBI had investigated Steven Bearcrane’s death in a manner his family found non-objectionable, his death might still be classified as a non-crime and the Bearerane Family Members would still be denied access to the victims’ rights statutes. Thus, the requisite causal connection is lacking here.
Finally, even if I were to agree with the majority that the Bearerane Family Members had standing to assert an equal protection claim in their individual capacities against the FBI, I would nonetheless find that they did not successfully state a claim upon which relief could be granted, and would affirm the district court’s dismissal under Rule 12(b)(6). To state such a claim against the FBI, the Bearerane Family Members must allege facts demonstrating that the FBI’s actions “had a discriminatory impact, and that [the FBI] acted with an intent or purpose to discriminate based upon [the Bearerane Family Members’] membership in a protected class.” Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009). Where a “challenged governmental policy is ‘facially neutral,’ proof of disproportionate impact on an identifiable group, *609 such as evidence of ‘gross statistical disparities,’ can satisfy the intent requirement tuhere it tends to show that some invidious or discriminatory purpose underlies the policy.” Id. (emphasis added). But “official action will not be held unconstitutional solely because it results in a racially disproportionate impact. Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination.” Village of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-65, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (internal quotation omitted).
Here, none of the Bearcrane Family Members’ non-conelusory factual allegations show a pattern and practice of racial discrimination by the FBI, or show that the FBI acted with an intent or purpose to discriminate against them because they are Native Americans. Likewise, the statistics presented, while perhaps demonstrating gross statistical disparities, do not tend to show that the FBI intentionally or purposefully discriminated against the Bearcrane Family Members based on their membership in a protected class in administering its cases, or that these statistics result from the FBI’s conduct at all.
I would thus affirm the district court’s dismissal of the Bearcrane Family Members’ equal protection claim for lack of standing, and for failure to state a claim upon which relief can be granted.