Justice THOMAS, dissenting.
Until now, the rule for pleading a claim under a federal antidiscrimination statute was clear: A plaintiff had to plausibly allege that discrimination was the but-for cause of an adverse action, unless the statute's text unequivocally replaced that standard with a different one. Today, however, the Court departs from this rule, concluding that the federal-sector provision of the Age Discrimination in Employment Act of 1967 (ADEA) imposes liability if an agency's personnel actions are at all tainted by considerations of age. See ante , at 1171. This rule is so broad that a plaintiff could bring a cause of action even if he is ultimately promoted or hired over a younger applicant. This novel "any consideration" standard does serious damage to our interpretation of antidiscrimination statutes and disrupts the settled expectations of federal employers and employees. I therefore respectfully dissent.
I
A
In my view, the default rule of but-for causation applies here because it is not clearly displaced by the text of the ADEA's federal-sector provision. Though the Court engages at length with the provision's text, it barely acknowledges our default rule, which undergirds our antidiscrimination jurisprudence. Because the interpretation of an antidiscrimination statute must be assessed against the backdrop of this default rule, I begin by describing the rule in detail.
We have explained that "[c]ausation in fact-i.e., proof that the defendant's conduct did in fact cause the plaintiff 's injury-is a standard requirement of any tort claim," including claims of discrimination. University of Tex. Southwestern Medical Center v. Nassar , 570 U.S. 338, 346, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) (quoting various provisions of the Restatement of Torts (1934)). "In the usual course, this standard requires the plaintiff to show that the harm would not have occurred in the absence of-that is, but for-the defendant's conduct." Id. , at 346-347, 133 S.Ct. 2517 (internal quotation marks omitted). But-for causation is "the background against which Congress legislate[s]," and it is "the default rul[e Congress] is presumed to have incorporated, absent an indication to the contrary in the statute itself." Id. , at 347, 133 S.Ct. 2517 (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 265 (5th ed. 1984)). We have recognized as much when interpreting 42 U.S.C. § 1981's prohibition against racial discrimination in contracting, Comcast Corp. v. National Assn. of African American-Owned Media , 140 S.Ct. 1009, Title VII's retaliation provision, Nassar , 570 U.S. 338, 133 S.Ct. 2517, and the private-sector provision of the ADEA, Gross v. FBL Financial Services, Inc. , 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).
Given this established backdrop, the question becomes whether the federal-sector provision of the ADEA contains sufficiently clear language to overcome the default rule. The provision states: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age ... shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a).
I agree with the Court that discrimination means differential treatment, that *1180 "based on" connotes a but-for relationship, and that "to make" typically means to produce or to become. Ante , at 1173. But I disagree with the Court's overall interpretation of how these terms fit together. Specifically, the Court believes that " 'based on age' " modifies only " 'discrimination,' " not " 'personnel actions.' " Ante , at 1173. From this, the Court concludes that the plain meaning of the text "demands that personnel actions be untainted by any consideration of age." Ante , at 1171.
In my view, however, the provision is also susceptible of the Government's interpretation, i.e., that the entire phrase "discrimination based on age" modifies "personnel actions." Under this reading, as the Government explains, the provision "prohibits agencies from engaging in 'discrimination based on age' in the making of personnel actions." Brief for Respondent 16. Because the only thing being "made" in the statute is a "personnel action," it is entirely reasonable to conclude that age must be the but-for cause of that personnel action.
At most, the substantive mandate against discrimination in § 633a(a) is ambiguous. And it goes without saying that an ambiguous provision does not contain the clear language necessary to displace the default rule. Accordingly, I would hold that the default rule of but-for causation applies here.
B
The Court attempts to downplay the sweeping nature of its novel "any consideration" rule by discussing the limited remedies available under that rule. Specifically, the Court declares that a plaintiff can obtain compensatory damages, backpay, and reinstatement only if he proves that age was a but-for cause of an adverse personnel action. Otherwise, he can obtain only injunctive or prospective relief. See ante , at 1177 - 1178.
If the text of the ADEA contained this remedial scheme, it would support the Court's conclusion regarding causation. But the Court does not cite any remedial statutory provision. Nor can it, as one does not exist. The Court also fails to cite any authority suggesting that its remedial scheme existed, at common law or otherwise, in 1974 when Congress added the federal-sector provision to the ADEA. § 28(b)(2), 88 Stat. 74-75.
Instead, the Court principally relies on Texas v. Lesage , 528 U.S. 18, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999) (per curiam ), which applied Mt. Healthy City Bd. of Ed. v. Doyle , 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). See Lesage , 528 U.S. at 20-22, 120 S.Ct. 467. But Mt. Healthy and, by extension, Lesage do not assist the Court. In Mt. Healthy , the Court crafted, for the first time, a remedial scheme for constitutional claims brought under 42 U.S.C. § 1983. 429 U.S. at 285-287, 97 S.Ct. 568. Significantly, that decision postdates enactment of the federal-sector provision by three years. And Mt. Healthy did not import a remedial scheme from a previously existing statute or common-law rule. Rather, the Court cited other cases in which it had similarly fashioned a novel causation standard for constitutional claims-none of which concerned remedies-as "instructive in formulating the test to be applied." Id. , at 286-287, 97 S.Ct. 568. It is incongruous to suggest that Congress could have intended to incorporate a remedial scheme that appears not to have existed at the time the statute was passed. Moreover, Mt. Healthy concerned a constitutional injury, and the Court was tasked with creating a remedy for that injury in the face of § 1983's silence. The Court fails to provide any explanation as to why it is appropriate to rely on judicially *1181 fashioned remedies for constitutional injuries in this purely statutory context.
In sum, the Court implausibly concludes that, in the federal-sector provision of the ADEA, Congress created a novel "any consideration" causation standard but remained completely silent as to what remedies were available under that new rule. Just as implausibly, the Court assumes from this congressional silence that Congress intended for judges to craft a remedial scheme in which the available relief would vary depending on the inflicted injury, using an as-yet-unknown scheme.
I would not follow such an unusual course. We have stated in the past that we must "read [the ADEA] the way Congress wrote it." Meacham v. Knolls Atomic Power Laboratory , 554 U.S. 84, 102, 128 S.Ct. 2395, 171 L.Ed.2d 283 (2008). The federal-sector provision contains no clear language displacing the default rule, and Congress has demonstrated that it knows how to do so when it wishes. See 42 U.S.C. § 2000e-2(m) (providing that an employer is liable if an employee establishes that a protected characteristic was a motivating factor in an employment action); § 2000e-5(g)(2)(B) (limiting the remedies available to plaintiffs who establish motivating factor liability).[1] Rather than supplementing a novel rule with a judicially crafted remedy, I would infer from the textual silence that Congress wrote the ADEA to conform to the default rule of but-for causation.
II
Perhaps the most striking aspect of the Court's analysis is its failure to grapple with the sheer unworkability of its rule. The Court contends that a plaintiff may successfully bring a cause of action if age "taint[s]" the making of a personnel action, even if the agency would have reached the same outcome absent any age-based discrimination. Ante , at 1173 - 1174. Because § 633a(a)'s language also appears in the federal-sector provision of Title VII, 42 U.S.C. § 2000e-16(a), the Court's rule presumably applies to claims alleging discrimination based on sex, race, religion, color, and national origin as well.
The Court's rule might have some purchase if, as Babb contends, the Federal Government purposely set up a purely merit-based system for its personnel actions. But as anyone with knowledge of the Federal Government's hiring practices knows, this is hardly the case. Federal hiring is riddled with exceptions and affirmative action programs, which by their very nature are not singularly focused on merit.
A few examples suffice to demonstrate this point. The Veterans Preference Act of 1944 entitles certain veterans, their spouses, and their parents to preferences in hiring and in retention during reductions in force. 5 U.S.C. §§ 2108(3), 3502, 3309 ; 5 CFR § 211.102 (2019). Affirmative action exists for people with disabilities, both in competitive and noncompetitive employment. See 29 U.S.C. § 791 ; 5 CFR § 213.3102(u) ; 29 CFR § 1614.203(d) (2019). The Federal Equal Opportunity Recruitment Program requires agencies to implement recruitment plans for women and certain underrepresented minorities. 5 U.S.C. § 7201 ; 5 CFR § 720.205. And Exec. Order No. 13171, 3 CFR 299 (2000), requires federal agencies to "provide a plan for recruiting Hispanics that creates a fully diverse work force for the agency in the 21st century." Whatever the wisdom of *1182 these policies, they are not strictly merit-based hiring.
The Court's new rule is irreconcilable with these various programs because affirmative action initiatives always taint personnel actions with consideration of a protected characteristic. Consider Exec. Order No. 13583, 3 CFR 267 (2011), which directs agencies to "develop and implement a more comprehensive, integrated, and strategic focus on diversity and inclusion as a key component of their human resources strategies." To provide just one example of how agencies are implementing this requirement, Customs and Border Protection's plan commits the agency to "[i]ncreas[ing the] percentage of applicants from underrepresented groups for internships and fellowships," "[c]reat[ing] a targeted outreach campaign to underrepresented groups for career development programs at all levels," "[e]stablish[ing] and maintain[ing] strategic partnerships with diverse professional and affinity organizations," "[a]nalyz[ing] demographic data for new hires and employee separations to identify and assess potential barriers to workforce diversity," and "[d]evelop[ing] a diversity recruitment performance dashboard which provides relevant statistics and related performance metrics to evaluate progress towards achievement of recruitment goals." U.S. Customs and Border Protection, Privacy and Diversity Office, Diversity and Inclusion: Strategic Plan 2016-2020, pp. 11-15 (2015). Programs such as these intentionally inject race, sex, and national origin into agencies' hiring and promotion decisions at the express direction of the President or Congress.
A but-for (or even a motivating-factor[2] ) standard of causation could coexist relatively easily with these affirmative action programs, as it would be difficult for a plaintiff to plausibly plead facts sufficient to establish the requisite causation. The Court's rule, by contrast, raises the possibility that agencies will be faced with a flood of investigations by the EEOC or litigation from dissatisfied federal employees. So long as those employees can show that their employer's decision to hire a particular job applicant was "tainted" because that applicant benefited in some way from an affirmative action program, their complaints to enjoin these programs can survive at least the pleadings stage.[3]
* * *
Today's decision is inconsistent with the default rule underlying our interpretation of antidiscrimination statutes and our precedents, which have consistently applied that rule. Perhaps just as important, the Court's holding unnecessarily risks imposing *1183 hardship on those tasked with managing thousands of employees within our numerous federal agencies. I respectfully dissent.

Justice GINSBURG joins all but footnote 3 of this opinion.

Courts have followed similar reasoning when determining the standard of causation under the Americans with Disabilities Act. See, e.g., Natofsky v. New York , 921 F.3d 337, 346-348 (CA2 2019) ; Gentry v. East West Partners Club Mgmt. Co. , 816 F.3d 228, 233-236 (CA4 2016) ; Serwatka v. Rockwell Automation, Inc. , 591 F.3d 957, 961-964 (CA7 2010).

Many Courts of Appeals apply the motivating-factor standard to federal-sector Title VII claims. See, e.g., Ponce v. Billington , 679 F.3d 840, 844 (CADC 2012) ; Makky v. Chertoff , 541 F.3d 205, 213-214 (CA3 2008). Even assuming this is a correct interpretation, see 42 U.S.C. § 2000e-16(d) (incorporating by reference the private-sector motivating-factor provisions), the Court's "any consideration" rule imposes an even lower bar. No party submitted briefing on the criteria that courts or the Equal Employment Opportunity Commission (EEOC) use to establish a motivating factor, but the cases from which this standard was derived indicate that it mirrored the tort concept of substantial cause. See, e.g., Price Waterhouse v. Hopkins , 490 U.S. 228, 249, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion); Mt. Healthy City Bd. of Ed. v. Doyle , 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

On this score, it is worth mentioning that even the EEOC has not adopted the Court's low bar but instead employs a motivating-factor standard. See, e.g., Brenton W. v. Chao , 2017 WL 2953878, *9 (June 29, 2017) ; Arroyo v. Shinseki , 2012 WL 2952078, *4 (July 11, 2012).