PRADO, Circuit Judge,
concurring in part and dissenting in part:
In holding that the plaintiffs’ cause of action for their Americans with Disabilities Act (“ADA”) claim accrues when the City completes the noncompliant construction, today’s majority ignores the plain text of the statute, fails to acknowledge the conflict it creates with traditional rules of standing, and creates a rule at odds with the ADA’s broad remedial purpose. I rec *442 ognize the merits of the majority’s position and sympathize with the majority’s goal of ensuring that the City is not liable for stale claims. Nevertheless, I conclude that the better rule — and the one that best comports with the text and purpose of the ADA — is that a cause of action accrues when a plaintiff suffers an injury under the Act based on that plaintiffs actual (as opposed to conjectural) inability to traverse the noncompliant sidewalk or other facility. Therefore, with great respect for my colleagues, I must dissent.[1]
I.
The main issue in this case is the purely legal question of when a plaintiffs claim for injunctive relief under Title II of the ADA accrues.[2] There are two possibilities: the claim accrues either (1) when the City completes the inaccessible construction or alteration or (2) when the plaintiff actually encounters the noncompliant sidewalk or other facility.
In choosing the earlier accrual date, the majority makes a significant legal misstep: it fails to identify precisely when the plaintiffs in this case suffered an injury. That, to me, is the crux of the issue. Comporting with our general approach to claim accrual, a plaintiffs claim accrues when the plaintiff suffers an injury. See Wallace v. Kato, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); Walker v. Epps, 550 F.3d 407, 414 (5th Cir.2008) (noting that “the limitations period begins to run ‘the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured’ ” (quoting Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir.2001))). Under the text of the ADA provision at issue, an injury occurs when the plaintiff actually suffers exclusion from or denial of a service, program, or activity of a public entity because of a disability. See 42 U.S.C. § 12132. The majority’s discussion of the discovery rule — which can postpone the running of a statute of limitations for a prior injury — is thus misplaced and unnecessary. See Disabled in Action of Pa. v. Se. Pa. Transp. Auth., 539 F.3d 199, 214 (3d Cir.2008) (“[T]he district court erred in applying the discovery rule to establish when [the plaintiffs’] claims accrued before first determining, per the terms of § 12147(a), when [the plaintiffs’] alleged injuries occurred. These inquiries are analytically distinct.”). Instead, we should focus on when the plaintiffs in this case actually suffered an injury under the ADA.
As the majority notes, “[a] claim ordinarily accrues when a plaintiff has ‘a complete and present cause of action’ or, stated differently, when ‘the plaintiff can file suit and obtain relief.’ ” Maj. Op. at 439 (quoting Wallace, 549 U.S. at 388, 127 S.Ct. 1091). Only congressional guidance can allow us to deviate from this general rule. Indeed, the Supreme Court has admonished that “[w]hile it is theoretically possible for a statute to create a cause of action that accrues at one time for the *443 purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute.” Reiter v. Cooper, 507 U.S. 258, 267, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). As the Supreme Court has further explained, “Unless Congress has told us otherwise in the legislation at issue, a cause of action does not become ‘complete and present’ for limitations purposes until the plaintiff can file suit and obtain relief.” Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal, 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997).
A plaintiff does not have a complete and present cause of action and cannot file suit and obtain relief until, inter alia, he or she has standing, which in turn requires the plaintiff to suffer an “injury in fact.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Thus, an essential question (and one I think the majority overlooks) is when these particular plaintiffs suffered an injury in fact.
One need only look to the text of the ADA to answer this question. The provision at issue, 42 U.S.C. § 12132, provides that
no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
The focus of the statute is on an individual with a disability being excluded from or denied the benefits of services, programs, or activities. Although the City’s wrongful construction is a general discriminatory act against all disabled people, a particular disabled person would not suffer an injury in fact until he or she encounters that discriminatory exclusion or denial. Simply put, there cannot be an injury under the ADA until the plaintiff actually suffers the exclusion or denial that the statute prohibits. Thus, to suffer an injury under Title II of the ADA, the qualified individual must have actually encountered the discrimination or actually be deterred from visiting the public accommodation because of exclusion from or denial of the benefits of a service, program, or activity. See Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1136-37 (9th Cir.2002) (“[Ojnce a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury.” (emphasis added)); Access 4 All, Inc. v. Trump Int’l Hotel & Tower Condo., 458 F.Supp.2d 160, 167 (S.D.N.Y.2006) (“In the context of the ADA, awareness of discriminatory conditions, and the avoidance of a public accommodation because of that awareness, is injury in fact.” (emphasis added)). A plaintiff would not have standing to bring suit against the City here unless that plaintiff had actually encountered the noncompliant sidewalk or other facility. Under the general rule for statutes of limitations, then, the claim does not accrue until this point.
Of course, Congress can specify precisely when the claim will accrue. The Third Circuit recently resolved a case involving a different provision of the ADA under such a scenario. See Disabled in Action, 539 F.3d 199. In that case, the public entity, the Philadelphia subway system, planned to make alterations to one of its subway stations but was not going to include an elevator. Id. at 205. A nonprofit group that seeks to eliminate discrimination against disabled people brought suit more than two years after learning of the sub *444 way system’s plans but less than two years after the completion of the construction. Id. at 206. The parties agreed that the applicable statute of limitations was two years; thus, if the plaintiffs’ cause of action accrued when they learned of the public entity’s plans, their suit was untimely, but if it accrued at the completion of construction, then their suit fell within the statute of limitations. Id. at 208. The Third Circuit accepted the plaintiffs’ argument that their claim did not accrue until the subway system had actually finished the construction without an elevator.[3] Id. at 209. The court based its decision on the language of the relevant statute, which provides that a public entity discriminates if it makes alterations to its transportation system that, upon the completion of such alterations, are inaccessible. Id. at 209-10 (citing 42 U.S.C. § 12147(a)). That is, the court construed the statute’s language as stipulating when the injury occurred and therefore the cause of action accrued: “upon the completion of such alterations.” Id. (citing 42 U.S.C. § 12147(a)).
Here, the plaintiffs assert a violation of a different portion of the ADA, 42 U.S.C. § 12132, which is the general prohibition against discrimination in the services, programs, or activities of a public entity. As the majority correctly explains, this includes the provision of accessible sidewalks. Based on a regulation implementing the ADA’s mandates, a public entity must include curb cuts when undertaking new construction or alterations to a sidewalk. See 42 U.S.C. § 12134(a); 28 C.F.R. § 35.151(e)(1). Specifically, with respect to construction or alterations commenced after January 26, 1992, “Newly constructed or altered streets, roads, and highways must contain curb ramps or other sloped areas at any intersection having curbs or other barriers to entry from a street level pedestrian walkway.” 28 C.F.R. § 35.151(e)(1).
Notably, neither 42 U.S.C. § 12132 nor 28 C.F.R. § 35.151(e)(1) includes language suggesting that the injury occurs upon completion of the construction or alteration. Instead, “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity.” 42 U.S.C. § 12132. One aspect of possible discrimination is a newly-constructed or altered sidewalk that does not include a curb cut. 28 C.F.R. § 35.151(e)(1). Much like the text of the statute informed the Third Circuit’s decision in Disabled in Action, so too should the text of the ADA’s general prohibition against discrimination inform our analysis. We should vary from the typical rule for claims accrual only for a particularly compelling reason, such as if the text or context of the statute at issue so compels. See Bay Area Laundry, 522 U.S. at 201, 118 S.Ct. 542. But that is not the case here. Indeed, the policies behind the ADA, as I discuss below, counsel us to adhere to the general rule in this case.
Construing the plaintiffs injury as occurring when that plaintiff actually encounters a noncompliant sidewalk or other facility makes logical and legal sense. A plaintiff who simply might suffer an injury in the future based on the public entity’s wrongful act does not have standing if the individual has no knowledge that he or she is being denied access because of a lack of a curb cut on a sidewalk. For example, a disabled person who lives- on the other side *445 of town from the noneompliant sidewalk, does not learn of the noneompliant sidewalk, and will never encounter this sidewalk has not suffered an injury in fact under the ADA and would not have standing to file suit. Standing is necessarily founded upon an actual injury, and in the context of 42 U.S.C. § 12132, an injury occurs when the disabled individual actually attempts to use (or is deterred from using) the noneompliant sidewalk. See HIP (Heightened Independence & Progress), Inc. v. Port Auth. of N.Y. & N.J., No. 07-2982, 2008 WL 852445, at *4 (D.N.J. Mar. 28, 2008) (“The re-opening of the Grove Street PATH Station, alone, did not injure Plaintiffs. Only after Plaintiffs’ members attempted to use the Grove Street PATH Station, and realized that it was not accessible to disabled persons, was an injury sustained.”).
It follows that the actual denial of access constitutes a plaintiffs injury under the ADA; only then can a plaintiff have a “complete and present cause of action” to “file suit and obtain relief.” That is, based upon the statutory prohibition in the text of the ADA, the actual — as opposed to conjectural — denial of access triggers the running of the statute of limitations, particularly when the plaintiff is seeking only injunctive relief. See James v. City of Dallas, 254 F.3d 551, 563 (5th Cir.2001) (noting that to have standing to seek injunctive relief, a plaintiff must show that he or she is “likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury” (emphasis added)).
The majority proceeds, however, as if a disabled person suffers an injury — and therefore has a complete and present cause of action — once the City finishes the construction. According to the majority, the City’s wrongful act triggers the statute of limitations. But 42 U.S.C. § 12132 focuses not on the City, but on a qualified individual who is being excluded from or denied the benefits of a service, program, or activity. Indeed, the majority acknowledges that to prove a prima facie case under Title II of the ADA, the plaintiff must show that, inter alia, he or she is “being denied the benefits of services, programs, or activities.” Maj. Op. at 435 (citing Melton v. Dallas Area Rapid Transit, 391 F.3d 669, 671-72 (5th Cir.2004)) (emphasis added). The use of the gerund “being” signifies that the plaintiff must show that he or she is suffering a present or future injury to obtain injunctive relief. If the plaintiff never encounters the non-compliant sidewalk (or is not actually deterred from accessing it), then he or she is not being excluded from or denied the benefits of anything. See HIP (Heightened Independence & Progress), Inc., 2008 WL 852445, at *4.
It is not as if the City’s construction injured the plaintiff but the plaintiff did not understand the effects of the City’s wrongful act or recognize the injury; instead, the plaintiff does not suffer an injury at all until he or she physically encounters, or actually learns of and is deterred from attempting to access, a noneompliant sidewalk. A lack of accessibility in the abstract is not enough for a disabled plaintiff to have standing, as that would be a conjectural harm. See, e.g., O’Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); cf. Pickern, 293 F.3d at 1136-37. Put differently, a denial of access is not a later consequence of an injury but rather is the injury itself. The plaintiffs here recognized this when they described the injury in their complaint as the “frequent[ ] deni[al of] the full and equal use and enjoyment of Arlington’s pedestrian rights-of-way while conducting daily activities.” The complaint also details the specific barriers to access each plaintiff suffers every day and affirms the *446 plaintiffs’ desire to travel to various inaccessible destinations in the future.
The majority fails to recognize that the City’s wrongful act and the plaintiffs’ injury occur at different points in time. Although the majority rejects the Western District of Pennsylvania’s analysis in Voices for Independence as unpersuasive, that decision correctly separated the wrongful act from the plaintiffs injury. Under the same facts as here, the court stated,
While we agree with Defendants that it is acts of “new construction” and/or “alterations” which trigger a public entity’s duty to install the requisite curb cuts and, while we further agree that the failure to install the required curb cuts constitutes an act of discrimination under Title II of the ADA, we conclude that Defendants’ statute of limitations argument misses the mark. The issue of when a defendant’s duty arises (and/or when it is breached by perpetration of a discriminatory act) is distinct from the issue of when a plaintiffs injury arises or when his cause of action begins to accrue.
2007 WL 2905887, at *13. We should not conflate the City’s wrongful act with the plaintiffs’ injury stemming from that wrongful act. These are two separate and distinct concepts. Although a wrongful act and an injury often occur at the same time, they are not concurrent here. The City acts unlawfully when it builds a noncompliant sidewalk, but the individual plaintiffs are not injured until they actually suffer the barrier to access. Because there is a private right of action to vindicate one’s rights under Title II of the ADA, and because a plaintiff must actually be excluded from or denied the benefits of the sidewalks or other facilities to suffer an injury and therefore have a cause of action under the text of the statute, we must separate the initial wrongful act from the plaintiffs injury.[4] It follows that the date on which the City constructed a sidewalk without a curb cut has no bearing on the accrual of the cause of action. The focus of our analysis should be on when the plaintiffs actually suffered the denial of access that the text of the ADA prohibits.
In sum, under our general rule for statutes of limitations, a plaintiffs claim does not accrue until he or she has a complete and present cause of action. A plaintiff does not have a complete and present cause of action unless the plaintiff has standing, which in turn requires the plaintiff to suffer an injury in fact. Under Title II of the ADA, a plaintiff does not suffer an injury in fact until he or she suffers actual exclusion from the inaccessible services, programs, or activities. It follows that the statute of limitations did not begin to run in this case until the plaintiffs actually encountered the noncompliant sidewalk or other facility.
II.
There is no compelling reason to deviate from our general rule for claim accrual in *447 this case. In fact, the policy considerations cut in favor of ruling that the plaintiffs’ request for injunctive relief to correct the ADA noncompliance accrues when the plaintiffs actually suffer the injury. In weighing the relevant policies in this case, the majority fails to consider the ADA’s “broad mandate” and “sweeping purpose” of eradicating discrimination against disabled people in public accommodations. See, e.g., PGA Tour, Inc. v. Martin, 582 U.S. 661, 675, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001); see also Meyers ex rel. Benzing v. Texas, 410 F.3d 236, 239 (5th Cir.2005) (discussing the “ADA’s broad prohibitions of discrimination in public services and accommodations”).
The majority focuses on the policies underlying statutes of limitations, but it wholly ignores both the policies underlying the ADA and the consequences of its decision. Congress enacted the ADA “to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.” 42 U.S.C. § 12101(b)(1). With respect to curb cuts — which is the focus of the plaintiffs’ complaint — Congress noted that “[t]he employment, transportation, and public accommodation sections of this Act would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets.” H.R.Rep. No. 101-485, at 84 (1990), as reprinted in 1990 U.S.C.C.A.N. 303, 367. By cutting off a plaintiffs ability to sue two years after the City completes the construction or alteration, the majority leaves many disabled people with no ability to vindicate their rights. In essence, the City can avoid all liability and maintain noncompliant sidewalks if it successfully avoids a lawsuit for two years after completing the construction or alteration. The City could then have what amount to “illegal” sidewalks in perpetuity. A newly disabled person, or a disabled person who just moves to the City, would have no recourse but to suffer through the ADA violation. This result runs directly counter to the ADA’s sweeping remedial purpose. See PGA Tour, Inc., 532 U.S. at 675.
Ruling that the cause of action accrues upon the completion of the construction places upon disabled people an affirmative duty to go out and find all noncompliant sidewalks just after construction or face having to live with sidewalks without curb cuts possibly forever (or at least until the City makes additional improvements or alterations to those sidewalks). As the court in Voices for Independence noted, “Defendants would have us place an affirmative burden on disabled persons such as the Plaintiffs to navigate and seek out defective curb cuts far and wide in order to file suit within two years of their installation. Such a result strikes this Court as unduly burdensome and contrary to the remedial purposes of the statute.” 2007 WL 2905887, at *15. Such a duty simply perpetuates the conditions that Congress condemned nineteen years ago when it enacted the ADA. As Congress noted,
[Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.
42 U.S.C. § 12101(a)(2).
There are certainly policy considerations that cut the other way. If the court measures the limitations period from the time that any potential plaintiff encounters the ADA violation (i.e., suffers a denial of access), then the City could be subject to liability many years after constructing the sidewalk. Indeed, there would likely be no shortage of plaintiffs seeking to redress *448 the ADA violation, thereby mitigating the effect of any statute of limitations for all practical purposes.
Two key facts, however, temper this concern. First, the City’s wrongful conduct causes legal injuries to disabled people every day.[5] Of course, the statute of limitations might run as to any particular plaintiff who does not file suit within two years of encountering a noncompliant sidewalk. A statute of limitations should not, however, cut off a plaintiffs ability to redress a new injury to that plaintiff, even if that new injury originated from prior wrongful conduct. That is, as I discuss above, wrongful conduct does not become actionable until a plaintiff suffers an injury based on that conduct. Thus, the City’s policy argument is less convincing because it is essentially asserting that if it successfully evades litigation for two years, it is exempt from complying with the ADA altogether, even though disabled people continue to suffer injuries based on the City’s wrongful conduct.
Second, the City can avoid all future liability by simply fixing the original unlawful construction. The City is not liable forever; it is responsible only for correcting the deficient construction or alteration.[6] Precisely defining when the injury occurs therefore answers, or at least outweighs, the majority’s main policy concerns. The broad remedial goal of the ADA — the eradication of public discrimination against disabled people — therefore *449 supports a ruling that a plaintiff suffers an injury when he or she actually encounters a prohibited denial of access to a public entity’s services, programs, or activities.
We must choose between two options, neither of which is ideal. Either we must give stronger credence to the policies behind statutes of limitations, thereby eschewing the broad goals of the ADA, or we must forego the City’s desire to strictly cut off its liability to allow disabled people to vindicate their rights. The majority chooses the former; the text of the ADA, the analysis of when a plaintiff actually suffers an injury, and the purposes behind the Act compel me to choose the latter.
III.
This case presents us with a difficult choice. With immense respect for the majority’s position, I think that the better, legally correct, and more pragmatic answer is to allow a plaintiff to bring suit for injunctive relief within two years of his or her injury, that is, within two years of when the plaintiff was unable to access or was deterred from attempting to access a noncompliant sidewalk or other facility. The contrary result countenances a public entity’s decision to construct or alter a sidewalk without curb cuts, allowing this ADA violation to go uncorrected forever so long as no one brings suit within two years of the construction or alteration.
Implicit in the majority’s decision is an assumption that, most of the time, a plaintiff will exist who can file suit within two years of the City’s completion of the construction or alteration. Although that may be true in many situations, it is not always the case. This fact undermines the majority’s conclusion, demonstrating the negative consequences stemming from the court’s ruling.
Consider the following hypothetical: Suppose that a city is developing an area of town where no one lives. In the initial stages of the development, the city constructs sidewalks but mistakenly fails to include curb cuts. Two years and one month later, the city completes the development and people begin moving in. At that point, a disabled person would suffer an injury based upon his or her inability to access the sidewalks and navigate around the neighborhood. Given that there was no one who could have asserted an ADA claim within two years of the completion of the construction — because a disabled person would not have standing until he or she moves into the development and actually suffers a denial of access — no one would ever be able to sue to seek redress for this clear ADA violation. Such a result does not square with the conception of an “injury” under Title II of the ADA or Congress’s goal in enacting this statute. We do hot want to foreclose a lawsuit from an individual acting as a “private attorney general” to require the city to correct the ADA noncompliance. The city should not be “off the hook” for continued ADA compliance two years after completing the construction merely because there were no possible plaintiffs within that period. Moreover, the city can cut off its liability by simply curing the defect. Thus, carefully defining when the plaintiff suffers an injury for purposes of injunctive relief reconciles the problems inherent in the majority’s analysis.
Because the majority’s decision is inconsistent with the general rule of claim accrual, the conception of an injury under the text of the ADA for purposes of standing, and the broad goals of the Act, I respectfully dissent.

. I concur in Parts I and II of the court’s opinion.

. The majority concludes that a statute of limitations applies to a claim for injunctive relief under Title II of the ADA. But see Voices for Independence v. Pa. Dep’t of Transp., No. 06-78, 2007 WL 2905887, at *16 (W.D.Pa. Sept. 28, 2007) ("Defendants’ statute of limitations defense is somewhat misplaced in light of the fact that Plaintiffs are seeking only equitable relief here.”). Because I believe that even if a statute of limitations applies, it would begin to run only once the plaintiff actually encounters a noncompliant sidewalk or other facility, I merely assume the applicability of a statute of limitations to claims for injunctive relief. I would leave the full analysis of this issue for another day.

. The court did not discuss the issue in this case: whether the statute of limitations might accrue at some point after the public entity completes the construction. Indeed, the court’s ruling allowed the plaintiffs’ suit to proceed, so they did not need to seek the same rule that the plaintiffs do here.

. Consider, for example, the Alabama Supreme Court's decision in Ramey v. Guyton, 394 So.2d 2 (Ala. 1980). In that case, the defendant, a doctor, prescribed birth control pills to the plaintiff. Id. at 3. About a year after the plaintiff's visit to the doctor, she suffered a stroke, which she claimed stemmed from the doctor's alleged negligent act in prescribing the birth control pills. Id. The Alabama Supreme Court ruled that the plaintiff's cause of action accrued on the date of her stroke, not on the date the doctor prescribed the birth control pills. Id. As the court stated, "the negligent act and the resultant harm did not coincide. Thus, the accrual date of the cause is delayed to the date when the injury occurred.” Id. at 4. The same principle holds true here: the date of the wrongful act (improper construction) and the date of the plaintiffs’ injury (encountering the inaccessibility) are not the same.

. The majority’s discussion of the plaintiffs' continuing violation argument is circular. The majority rejects the plaintiffs’ continuing violation theory largely based on its resolution of the plaintiffs’ accrual argument. But in rejecting the accrual argument, the majority necessarily assumes that the plaintiffs are not suffering injuries each time they encounter a prohibited denial of access. The text of the ADA and the standing issues I discuss above support neither contention. Regardless, given the disposition I advocate, the court need not decide whether the continuing violation doctrine applies in this instance.

. In balancing the consequences of our decision, I recognize that one implication of my analysis is that under the reasoning of the rule I propose, it is possible that a city might be liable for money damages many years after improperly constructing non-ADA compliant facilities. This case does not present that question, however, as the plaintiffs conceded at oral argument that they are seeking only injunctive relief. The court therefore need not reach that issue.
Regardless, monetary damages under the ADA are likely less common than injunctive relief, as they are available only for intentional discrimination. Delano-Pyle v. Victoria County, 302 F.3d 567, 574 (5th Cir.2002) (“A plaintiff asserting a private cause of action for violations of the ADA or the [Rehabilitation Act] may only recover compensatory damages upon a showing of intentional discrimination.”). It would require an extraordinary situation to find that a city intentionally discriminated against disabled people by failing to include curb cuts in the sidewalks. The purposes of monetary damages and injunctive relief in the ADA context are thus different: monetary damages compensate an individual plaintiff for a defendant's prior intentional act of discrimination, whereas injunctive relief vindicates the rights of a disabled person stemming from an ongoing injury. See Texas v. Lesage, 528 U.S. 18, 22, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999) (per curiam) (criticizing this court for failing to distinguish between a retrospective claim for damages and a forward-looking claim for injunctive relief). Additionally, although the Supreme Court recently held that a plaintiff can receive monetary damages under the ADA for conduct that violates the Fourteenth Amendment, it left open whether damages are available for Title II violations that do not violate the Constitution. See United States v. Georgia, 546 U.S. 151, 159, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006). It might be that the imposition of monetary damages requires both intentional conduct and a violation of constitutional rights. Accordingly, the class of cases in which money damages will be available for ADA violations is likely quite small, tempering any concerns I might initially have had about a city’s ongoing fiscal liability.